IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JAMIE BAUZÓ-SANTIAGO,

    **Petitioner,**

        **v.**

UNITED STATES OF AMERICA,

    **Respondent.**

**Civil No.** 18-1847 (FAB)
related to
**Criminal No.** 12-602 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

    Petitioner Jamie Bauzó-Santiago ("Bauzó") moves to vacate, set aside, or correct his sentence in Criminal Case No. 12-602 (FAB) pursuant to 28 U.S.C. section 2255 ("section 2255"). (Docket No. 12.)[1] For the reasons set forth below, Bauzó's section 2255 motion is **DENIED**.

## I. Background

    On July 24, 2012, Puerto Rico Police Department ("PRPD") officers Eduardo Santos-Dávila ("Officer Santos") and Ricardo González-Cirino ("Officer González") conducted a "Control and Contention" patrol at approximately 11:00 p.m. in "La Cerámica," a housing development in Carolina, Puerto Rico. (Crim. Docket

---

[1] "Crim. Docket," "Civil Docket," and "App. Docket" refer to Criminal Case No. 12-602, Civil Case No. 18-1847, and Appellate Case No. 15-1280, respectively.

No. 220 at pp. 34, 66-69.)[2] Officer Santos observed Bauzó standing adjacent to a black Mercedes-Benz SUV, remove a nickel-plated pistol from his waistband, toss the firearm inside the SUV, and walk to a nearby house.  Id.  After exiting his patrol car, Officer Santos asked Bauzó whether he had a firearm license.  Id. at pp. 72-75.[3]  Bauzó answered "no."  Id.  Officer Santos requested that Bauzó accompany him to the SUV.  Id.  Subsequently, Officer Santos opened the unlocked driver-side door of the SUV and recovered a loaded Taurus .380 caliber pistol.  Id. at pp. 75-76. Officer Santos then arrested Bauzó.  Id. at p. 76.

At the police station, after receiving the Miranda warnings, Bauzó stated that he possessed the firearm for his safety because he sold jewelry and clothing.  Id. at pp. 84-85.  Indeed, PRPD officers recovered jewelry and clothing from the SUV during an inventory search.  Id.

---

[2] Although the intervention occurred at approximately 11:00 p.m., light from the patrol car headlights and a nearby streetlight illuminated the surrounding area.  (Crim. Docket No. 220 at p. 75.)

[3] Puerto Rico is a concealed-carry jurisdiction, prohibiting the "visual display of a firearm."  United States v. Avilés-Vega, 783 F.3d 69, 73 (1st Cir. 2015); see P.R. Laws Ann. tit 25, § 456a(d)(2) (stating that a civilian firearm license requires that the firearm "must be unloaded and transported inside a closed case whose contents are not visible and which may not be in plain sight"); People v. Río, 113 D.P.R. 684, 1982 PR Sup. LEXIS 256 (Official Translation) (Dec. 29, 1982) ("[Contrary] to the custom in some Western States of the United States, where persons can openly carry a firearm, the general rule in Puerto Rico is to restrict and control the possession and/or carrying of firearms . . . .").

On August 2, 2012, a grand jury returned a one-count indictment charging Bauzó with being a felon in possession of a firearm in violation of 18 U.S.C. section 922(g)(1) ("section 922(g)"). (Crim. Docket No. 9.) Assistant Federal Public Defenders Carlos Vázquez-Álvarez ("Vázquez") and Thomas Trebilcock-Horan ("Trebilcock") appeared on Bauzó's behalf. (Crim. Docket Nos. 8 and 26.)

Bauzó moved to suppress the pistol and his post-arrest statements, asserting that "the facts as presented by the government are incorrect." (Crim. Docket No. 27 at p. 4.) According to Bauzó, he stood "on the sidewalk in front of a home speaking to [its] residents" when PRPD officers approached him. Id. at p. 4. He asserts that the PRPD officers fabricated evidence by "planting the weapon inside [his] vehicle in an attempt to extort money." (Civil Docket No. 12, Ex. 1 at p. 4.)

Judge Carmen C. Cerezo ("Cerezo") referred the suppression motion to a magistrate judge for a report and recommendation ("R & R"). (Crim. Docket No. 34.) Officer Santos, Bauzó and Evelyn Berríos-Marrero, a neighbor who witnessed the intervention and arrest, testified at the suppression hearing. (Crim. Docket No. 46.) Magistrate Judge Camille Vélez-Rivé issued an R & R, "[finding] the version of facts as testified by [Officer Santos] to be too incredible to believe." (Crim. Docket No. 48 at p. 19.)

The R & R recommended that the Court grant Bauzó's motion to suppress.  Id.

Judge Cerezo held a *de novo* hearing, finding that "the testimony of Police Officer Santos-Davila was credible." (Crim. Docket No. 81 at p. 5.)  Consequently, the Court rejected the R & R and denied Bauzó's motion to suppress.  Id.

The attorney-client relationship deteriorated following the denial of Bauzó's motion to suppress.  Vázquez and Trebilcock met with Bauzó at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico to discuss "the results of [their] meetings with potential witnesses and prepare him for trial (including to prepare him to testify were he to choose to do so)." (Crim. Docket

No. 90 at p. 1.)[4]   Bauzó notified defense counsel that he mailed a letter to Judge Cerezo but refused to disclose the contents of this letter to Vázquez and Trebilcock.   Id.

Two days before the commencement of trial, Vázquez and Trebilcock moved to withdraw.   Id. at p. 3.   The Court granted their motion, continued trial, and ordered the Clerk of the Court to appoint a panel attorney pursuant to the Criminal Justice Act, 18 U.S.C. section 3006A.   (Crim. Docket Nos. 91 and 93.)   Laura Maldonado-Rodríguez ("Maldonado") filed a notice of appearance on May 30, 2014.   (Crim. Docket No. 96.)[5]

---

[4] The attorney-client privilege "protects confidential communications made by a client to his attorney." Maine v. United States Dept. of Interior, 289 F.3d 60, 70 (1st Cir. 2002); see Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) ("The [attorney-client] privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."). To protect this privilege, the Court restricted access to documents referring to communications between Bauzó and defense counsel. See Crim. Docket Nos. 90, 189 and 222. By contending that counsel performed ineffectively, however, section 2255 petitioners waive the attorney-client privilege. Alfano v. United States, 592 F. Supp. 2d 149, 160 (D.P.R. 2008) ("A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue and ascribes a course of action to his attorney that raises the specter of ineffectiveness . . . .") (citation and quotation omitted). The First Circuit Court of Appeals has held that circumventing the attorney-client privilege requires a "careful weighing of facts." United States v. Desir, 273 F.3d 39, 45-46 (1st Cir. 2001). Because the section 2255 motion sets forth a myriad of ineffective assistance of counsel allegations, Bauzó waived the attorney-client privilege to the extent "necessary to prove or disprove his claim." United States v. Goodwyn, 797 F. Supp. 2d 177, 182 (D. Mass. 2011). Accordingly, the Court cites previously sealed and redacted docket entries in this Opinion and Order to analyze whether defense counsel provided sufficient and adequate representation.

[5] The Clerk of the Court transferred this case to the undersigned judge on September 24, 2014. (Crim. Docket Nos. 112 and 113.)

The Clerk of the Court received Bauzó's signed, handwritten letter two months after his meeting with Vázquez and Trebilcock. (Crim. Docket No. 94.)  The letter states, among other things, that "I, Jaime Bauzó Santiago, number 40236-069, have always accepted my responsibility of guilt, the only thing that I ask is that it be a reasonable time for the weapons law crime." (Crim. Docket No. 173, Ex. 1.)[6]

Maldonado mounted a formidable pretrial defense on her client's behalf.  She traveled to Georgia to interview and meet with Bauzó in person. (Crim. Docket Nos. 99, 100, 102 and 104.)[7] Maldonado filed the following motions in anticipation of trial: (1) motion to appoint an investigator (granted by the Court), (2) *ex parte* motion requesting subpoenas to compel witness testimony and the production of documents (granted by the Court), (3) motion to strike surplusage from the indictment and objection to proposed jury instructions (denied by the Court), (4) motion *in limine* to preclude the United States from introducing Bauzó's *pro se* letter to Judge Cerezo at trial (denied by the Court),

_____

[6] The original letter is written in Spanish: "Yo Jaime Bauzó Santiago con el número 40236-069 siempre he aceptado mi responsabilidad de culpabilidad, lo único que yo le pido es que sea un tiempo razonable por el delito de la ley de arma." (Crim. Docket No. 94.) The United States filed a certified English translation of the letter. (Crim. Docket No. 173, Ex. 1.)

[7] The United States Marshals Service transferred Bauzó from MDC to a federal prison in Atlanta, Georgia. (Crim. Docket No. 100.)

(5) notice of intent to solicit testimony from a forensic document examiner (denied by the Court), (6) motion *in limine* to preclude "high crime incidence area" testimony (granted by the Court), and (7) motion to dismiss (denied by the Court).[8]  Maldonado also pursued a plea offer from the United States for a stolen firearm charge, an attempt to shield Bauzó from the 15-year mandatory minimum sentence in section 922(g).  (Crim. Docket No. 189 at p. 2.)

Despite Maldonado's vigorous pre-trial motion practice, Bauzó faulted her for failing to obtain a favorable plea agreement. (Crim. Docket No. 219 at p. 3.)  Like Vázquez and Trebilcock, Maldonado moved to withdraw on the eve of trial.  (Crim. Docket No. 189.)  She requested that the Court hold an *ex parte* hearing to address Bauzó's "complaints against counsel."  Id. at p. 3—4 (citing Missouri v. Frye, 566 U.S. 134 (2012)).

Before conducting *voir dire*, the Court excused the United States from the courtroom.  (Crim. Docket No. 219 at p. 2.)  Bauzó stated that he was "dissatisfied" with Maldonado because she purportedly:  (1) failed to obtain a "plea agreement to [his] liking," and (2) advised him of the risk associated with calling PRPD officers to the stand.  Id. at pp. 3—12.  Bauzó confirmed,

---

[8] See Crim. Docket Nos. 120, 122, 124 127, 128, 132, 138, 140, 143, 152, 166, 159, 170 and 182.

however, that Maldonado informed him that the United States offered successive plea agreements and that no one told "[him] to reject the plea." Id. at p. 6. The Court denied Maldonado's motion to withdraw, requesting that the parties meet to discuss a potential plea agreement. Id. at p. 4. These discussions bore no fruit. Trial commenced on October 14, 2014. (Crim. Docket No. 197.)

PRPD Officer Santos was among the witnesses who testified for the prosecution. (Crim. Docket Nos. 200 and 203.) Jenny Coss-Berríos ("Coss") and Jorge Bermúdez-Claudio ("Bermúdez"), family friends of Bauzó and La Cerámica residents, testified for the defense as eye-witnesses. (Crim. Docket No. 203.) Bauzó exercised his Fifth-Amendment right not to testify. Over Maldonado's repeated objections, the Court permitted the United States to introduce a redacted version of Bauzó's *pro se* letter to Judge Cerezo. (Crim. Docket No. 220 at pp. 50-62.)

The jury found Bauzó guilty. (Crim. Docket No. 207.)[9] Because Bauzó was convicted of at least three prior felonies for crimes of violence, the Court imposed a sentence of 188 months imprisonment

---

[9] The United States and Bauzó stipulated that "he has been convicted of a crime punishable by imprisonment for a term exceeding one year." Crim. Docket Nos. 114 and 137; see United States v. Tavares, 21 F.3d 1 (1st Cir. 1994).

pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  (Crim. Docket Nos. 245, 246 and 248.)[10]

Bauzó filed a timely notice of appeal.  (Crim. Docket No. 244.)  Jorge Rivera-Ortiz ("Rivera") served as appellate defense counsel.  (App. Docket, Apr. 24, 2015.)  Bauzó set forth two arguments on appeal.  (App. Docket, June 7, 2016.)  First, he argued that the Court erred in admitting the inculpatory statement contained in his letter to Judge Cerezo.  Id.  Second, Bauzó asserted that the Court miscalculated the number of his prior convictions.  Id.  The First Circuit Court of Appeals affirmed his conviction and sentence.  United States v. Bauzó-Santiago, 867 F.3d 13, 21-28 (1st Cir. 2017).  The District Court "did not abuse its discretion in admitting the letter at trial," nor was it "clear or obvious error . . . to count three of Bauzó's convictions as career-offender qualifiers."  Id. at 21-28.  Bauzó then filed a

---

[10] The Armed Career Criminal Act provides that "a person who violates section 922(g) of this title and has three prior convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be under this title and imprisoned not less than fifteen years."  18 U.S.C. § 924(e).

*pro se* motion for post-conviction relief pursuant to section 2255. (Civil Docket No. 12.)[11]

## II. Section 2255

Section 2255 embodies the common law writ of *habeas corpus*, an extraordinary remedy for "convictions that violate fundamental fairness."  Brecht v. Abrahamson, 507 U.S. 619, 622 (1993) (citation and quotation omitted).  Pursuant to section 2255, a prisoner in federal custody may move "to vacate, set aside or correct [his or her] sentence."  28 U.S.C. § 2255(a).  "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).

Section 2255 contains a one-year statute of limitations, beginning on the date that "judgment of conviction becomes final."

---

[11]  The Court is cognizant that *pro se* litigants are entitled to a liberal construction of their pleadings. While *pro se* litigants are held to less stringent standards, their motions must nevertheless meet certain fundamental requirements.  See United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003).  Specifically, petitioners are required to explicitly set forth their arguments:  "[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

28 U.S.C. § 2255(f)(1); see Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008) (holding that "the limitations period 'shall apply' to all motions made under § 2255").[12] For petitioners who appeal to the Supreme Court of the United States, judgment is final when *certiorari* is denied, or the conviction is affirmed. Derman v. United States, 298 F.3d 34, 41 (1st Cir. 2002) (citing Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999)). Because Bauzó did not seek *certiorari* review, the limitations period commenced "when the time [expired] for. . . contesting the appellate court's affirmation of the conviction." Ramos-Martínez v. United States, 638 F.3d 315, 320-21 (1st Cir. 2011) (citing Clay v. United States, 537 U.S. 522, 525 (2003)).

The First Circuit Court of Appeals affirmed Bauzó's conviction and sentence on August 8, 2017. Bauzó-Santiago, 867 F.3d 13. A petition for a writ of *certiorari* "is timely when it is filed with the [Clerk of the Supreme Court] within 90 days after entry of judgment." See Sup. Ct. R. 13.1. The period of limitations began on November 6, 2017, the deadline for Bauzó to seek *certiorari* review. See, e.g., United States v. Cheng, 392 F.

---

[12] Three additional contingencies trigger the one-year limitations period, all of which are irrelevant for purposes of this Opinion and Order. See, e.g., 28 U.S.C. § 2255(f)(2) ("The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action.").

Supp. 3d 141, 150 (D. Mass. 2019). The Bureau of Prisons mail service received Bauzó's *habeas* petition on October 10, 2018, approximately a month before the limitations period expired. Civil Docket No. 12, Ex. 3; Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002) ("[We] adopted the prisoner mailbox rule for § 2254 and § 2255 filings"). Accordingly, Bauzó's section 2255 motion is timely.

## III. Ineffective Assistance of Counsel

Bauzó requests that the Court vacate his conviction because Vázquez, Trebilcock, Maldonado and Rivera purportedly rendered ineffective assistance of counsel. (Civil Docket No. 12.) The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions "the accused shall enjoy the right to [. . .] the Assistance of Counsel for his defence." U.S. CONST. amend VI; see Rivera-Rivera v. United States, 844 F.3d 367, 372 (1st Cir. 2016) ("A claim of ineffective assistance of counsel, rooted in the Sixth Amendment, may be raised by means of a section 2255 motion.").

The principles set forth in Strickland v. Washington, 466 U.S. 668 (1984), govern ineffective assistance of counsel claims. See Rojas-Medina v. United States, 924 F.3d 9, 16 (1st Cir. 2019). Bauzó must establish by a preponderance of the evidence that: (1) counsel's performance "fell below an objective standard of

reasonableness," and (2) that this deficient performance resulted in actual prejudice.  Strickland, 466 U.S. at 687.  The Court presumes that "counsel's strategy and tactics fall within the range of reasonable professional assistance."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689). The Sixth Amendment "does not guarantee [Bauzó] a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining."  United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991).  The Strickland analysis is "highly demanding" and places a "heavy burden" on Bauzó.  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (citing Williams v. Taylor, 529 U.S. 362, 393 (2000)).

Bauzó contends that counsel performed ineffectively at every stage of his trial.  His claims pertain to the motion to suppress, his letter to Judge Cerezo, the Sixth Amendment and Speedy Trial Act, the cross-examination of Officer Santos, the constitutional right to testify in his own defense, dismissal of the indictment

at sentencing, the Armed Career Criminal Act, and alleged omissions by appellate counsel.[13]

## A.   The Motion to Suppress

Bauzó asserts that Vázquez and Trebilcock failed to cite the consensual encounter doctrine, the automobile exception to the Fourth Amendment, and the Fifth Amendment, in his motion to suppress. (Civil Docket No. 12, Ex. 1 at pp. 9-10) (citing Arizona v. Gant, 556 U.S. 332 (2009)).   He maintains that PRPD Officer "[González] planted the firearm in question and stated to [him] that for a lump sum of money the charges would be dismissed." (Civil Docket No. 12, Ex. 1 at p. 6.)

This argument is unavailing.   In Bauzó's motion to suppress, defense counsel requested an evidentiary hearing

---

[13] Bauzó filed a supplemental section 2255 motion on April 9, 2019, after the one-year period of limitations expired. (Docket No. 25, Ex. 1.)   The supplemental motion sets forth three claims: (1) that the United States withheld exculpatory evidence, (2) that defense counsel was ineffective for failing to investigate PRPD officer [Officer González], and (3) Maldonado failed to move for a "new trial based on [a] newly discovered Brady violation." Id.   Amendments to *habeas* petitions are governed by Federal Rule of Civil Procedure 15 ("Rule 15"). United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005).   Pursuant to Rule 15, untimely claims that "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading" are permissible pursuant to the relation back doctrine. Fed. R. Civ. P. 12(c).   This doctrine is "applied on a claim-by-claim basis." Capozzi V. United States, 768 F.3d 32, 33 (1st Cir. 2014); Mayle v. Feliz, 454 U.S. 644, 664 (2005) ("So long as the original and amended [section 2255] petitions state claims that are tied to a common core or operative facts, relation back will be in order."). Bauzó's original section 2255 motion is devoid of any reference to purported Brady violations or allegations that the United States withheld evidence. Accordingly, the first claim set forth in the supplemental section 2255 motion is time barred.   The claims concerning ineffective assistance of counsel relate back to the original petition, however, and are incorporated in the Court's analysis.

precisely because "we may very well learn that said PRPD officers
where [*sic*] not being truthful." (Crim. Docket No. 27 at p. 2.)
Bauzó presented his rendition of the facts at the suppression
hearing, the *de novo* hearing, and at trial. (Crim. Docket Nos. 46,
58 and 203.) Coss and Bermúdez testified that "15 minutes went by
from the time that Mr. Bauzó arrived to [the sidewalk in front of
their home to] the time that the police arrived." (Crim. Docket
No. 221 at p. 27.) Officer Santos claimed, however, that Bauzó
"was exactly by the driver's door" of the Mercedes Benz SUV.
(Crim. Docket No. 220 at p. 72.) The jury's rejection of Bauzó's
theory of the case does not warrant *habeas* relief. See Scott v.
Fisher, 652 F. Supp. 2d 380, 426 (W.D.N.Y. 2009) ("It is the jury's
function to decide whether the prosecution witnesses' version of
the events was believable; as a federal *habeas* court, I cannot
reverse the jury's determination that these witnesses were more
credible than the defense witnesses.").

Defense counsel's performance was objectively
reasonable. A voluntary response to a police inquiry is a
"consensual encounter that does not implicate the Fourth
Amendment." United States v. Davis, 638 F. Supp. 472, 475 (D.
Mass. 1986) (citing Florida v. Royer, 460 U.S. 491, 497 (1983)
("We do not suggest that there is a litmus-paper test for
distinguishing a consensual encounter from a seizure or for

determining when a seizure exceeds the bounds of an investigative stop."). In Gant, the Supreme Court held that the "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 344. The consensual encounter doctrine undermines Bauzó's Fourth Amendment argument, providing a legal basis for Officer Santos to question Bauzó about the firearm license. Setting forth this argument would be counterproductive to Bauzó's suppression motion. Although the defense did not refer explicitly to the "automobile exception," the Court considered whether the search of Bauzó's vehicle complied with the Fourth Amendment. Accordingly, Bauzó's arguments regarding the motion to suppress fail pursuant to the performance prong of the Strickland analysis.

Defense counsel's reliance on the Fourth Amendment rather than the Fifth Amendment was reasonable. Moving to suppress the firearm and Bauzó's post-arrest statements is not "so patently unreasonable that no competent attorney would have made this [decision]." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010). Absent from the trial and appellate record is any allegation or corroborating evidence that Officer González attempted to extort Bauzó. See United States v. Wallace, Case No. 00-122, 2017 U.S. Dist. LEXIS 9708 *25-26 (D.R.I. Jan. 24, 2017) (denying section

2255 motion because "[p]etitioner provides no evidence to corroborate his claims that false testimony and corrupt or fabricated evidence were presented at trial"). Defense counsel need not pursue unsubstantiated allegations or a myriad of legal arguments. Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) ("Trial counsel was under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel.") (citation omitted); Vega-Colón v. United States, 463 F. Supp. 2d 146, 153 (D.P.R. 2006) ("It is not sufficient for the *habeas* petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that he could make.") (Domínguez, J.) (citation and quotation omitted). Accordingly, Bauzó's arguments appurtenant to the motion to suppress are unpersuasive.

Bauzó faults defense counsel for not "objecting to the inconsistent decisions of the magistrate judge." (Civil Docket No. 12, Ex. 1 at p. 11.) The term "inconsistent decisions" misconstrues the record. After Magistrate Judge Vélez-Rivé issued the R & R, the Court held a *de novo* hearing. (Crim. Docket Nos. 48 and 76.) The Court, not Magistrate Judge Vélez-Rivé, subsequently denied Bauzó's motion to suppress. (Crim. Docket Nos. 48, 76 and 81.) In conducting its review of the R & R, the Court is free to "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); accord Loc. R. 72(d). Rejecting the R & R is a legitimate exercise of the Court's authority.

B.     The Letter to Judge Cerezo

Bauzó contends that he "was not warned of the dangers and disadvantages of submitting *pro-se* pleadings." (Civil Docket No. 12, Ex. 1 at p. 12.) According to his section 2255 motion, defense counsel was "ineffective for failing to object to the admission of [Bauzó's letter to Judge Cerezo]." Id. His argument lacks force for three reasons. First, Bauzó mailed the letter without consulting defense counsel. (Crim. Docket No. 90 at pp. 1-2.) He now seeks to impugn Vázquez and Trebilcock for the incriminating statements he made in their absence and without their knowledge. Bauzó is responsible for the letter, not defense counsel. Second, the record demonstrates that defense counsel repeatedly objected to the letter before and during trial. See Crim. Docket No. 132; Crim. Docket No. 225 at pp. 52-56. Third, the First Circuit Court of Appeals held that "Bauzó's letter is admissible under the version of Rule 410 in effect today, and so the district court did not abuse its discretion in admitting the letter at trial." Bauzó-Santiago, 867 F.3d at 21. The Court need not entertain arguments previously addressed by the First Circuit Court of Appeals in a *habeas corpus* action. Márquez v. United

States, 258 F. Supp. 2d 7, 11 (D.P.R. 2003) ("Issues disposed of in a prior appeal cannot be re-litigated by way of a 28 U.S.C. § 2255 motion.") (Acosta, J.) (citing Murchu v. United States, 926 F.2d 50, 55 (1st Cir. 1991)).

## C. Alleged Speedy Trial Violations

Bauzó claims that Vázquez, Trebilcock and Maldonado are "ineffective for failing to raise a speedy trial violation." (Civil Docket No. 12, Ex. 1 at p. 8.)   The Sixth Amendment guarantees that the accused shall "enjoy the right to a speedy and public trial." U.S. CONST. amend. VI.  Congress enacted the Speedy Trial Act ("STA") in 1974 to "protect a defendant's constitutional right to a speedy trial, and to serve the public interest in bringing prompt criminal proceedings."  United States v. Santiago-Becerril, 130 F.3d 11, 14 (1st Cir. 1997) (internal citation and quotation omitted); United States v. Bailey-Snyder, 923 F.3d 289, 295 (3d Cir. 2019) (noting that "the Speedy Trial Act [gives] effect to the Sixth Amendment's speedy trial guarantee by setting limits within which trials must begin"); see 18 U.S.C. §§ 3161 et seq.  The constitutional and statutory rights to a speedy trial are distinct and entail separate standards of review.   United States v. Muñoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999).  Because Bauzó does not distinguish between the Sixth Amendment and the STA, the Court will address both.

### 1.   The Speedy Trial Act

The Speedy Trial Act provides that a defendant must stand trial "within seventy days from the filing date (and making public) of the information or indictment, or from the date [he] appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).   Failure to commence trial within this timeframe requires dismissal of the indictment "on motion of the defendant." 18 U.S.C. § 3162(a)(2).   Time is excluded from the Speedy Trial clock, however, for delay "resulting from a continuance" and "from other proceedings concerning the defendant."   18 U.S.C § 3161(h)(1); see United States v. Mitchell, 723 F.2d 1040, 1045 (1st Cir. 1983).   The term "other proceedings" is expansive, including "any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. §§ 3161(h)(1)-(9).

The Speedy Trial Act also excludes "delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government." 18 U.S.C. § 3161(h)(7).   This exclusion is permissive.   Id.; see Zedner v. United States, 547 U.S. 489, 498 (2006) ("This provision gives the district court discretion — within limits and subject to specific procedures — to

accommodate limited delays for case-specific needs."). The Court

must determine whether "the ends of justice served by taking such

action outweigh the best interest of the public and the defendant

in a speedy trial." 18 U.S.C. § 3161(h)(7). The Speedy Trial Act

delineates factors "a court shall consider in considering an ends

of justice continuance, such as whether a failure to grant the

continuance would unreasonably deny the defendant . . . continuity

of counsel" or reasonable time for effective preparation. United

States v. Pakala, 568 F.3d 47, 58 (1st Cir. 2009) (internal

quotation omitted) (citing 18 U.S.C. § 3161(h)(7)(B)). The Court

need not "explicitly state its reasons for granting a continuance

nor make a best interest finding if it is obvious and set forth in

the motion for a continuance." United States v. Laureano-Pérez,

797 F.3d 45, 59 n.8 (1st Cir. 2015) (internal citation and

quotation omitted).[14]

Bauzó's arrest and initial appearance occurred on

July 26, 2012. (Crim. Docket No. 4.) The grand jury returned the

indictment on August 8, 2012. (Crim. Docket. No. 9.) Accordingly,

---

[14] See also United States v. Valdivia, 680 F.3d 33, 40 (1st Cir. 2012) ("In
constructing such [an ends-of-justice] finding, the district court need not
recite a formulaic incantation of the 'ends-of-justice' language, but it must
articulate clearly the reasons that support an ends-of-justice continuance.")
United States v. Rush, 738 F.2d 497, 508 (1st Cir. 1984) (holding that "it is
generally preferable to limit a continuance to a definite period for the sake
of clarity and certainty; but at the same time it is inevitable that in some
cases, like the present one, a court is forced to order an (h)(8) continuance
without knowing exactly how long the reasons for supporting the continuance
will remain valid.").

the Speedy Trial clock is determined by the date of indictment and
*voir dire*.  See <u>United States v. Brown</u>, 819 F.3d 800, 815 (6th
Cir. 2016) (citation omitted) (noting that for purposes of the
Speedy Trial Act, "trial generally commences when *voir dire*
begins"); <u>United States v. Castillo-Pacheco</u>, 53 F. Supp. 2d 55, 57
(D. Mass. 1999) (holding that the Speedy Trial "clock began on the
date of the indictment because it followed the initial appearance
before the magistrate judge of this district").  The first day of
trial is excluded from the Speedy Trial clock.  See 18 U.S.C.
§ 3161(h)(1).  Although 802 days elapsed between the indictment
and Bauzó's trial, certain intervals of time are excluded from the
Speedy Trial clock.  Crim. Docket Nos. 9 and 127; 18 U.S.C. §§
3161(h)(1)-(9).

As set forth in the table below, this two-year delay
is attributable to pretrial motions, hearings, and continuances.

**SPEEDY TRIAL ACT CALCULATION**

| DATE | DAYS | REASON FOR DELAY |
|------|------|------------------|
| August 2, 2012 | 0 | Indictment.  (Crim. Docket No. 9.)[15] |
| August 3, 2012 | 0 | Arraignment.  Crim. Docket No. 11; <u>see</u> 18 U.S.C. § 3161(h)(1)(A) ("delay resulting from any proceeding" is excused). |

---

[15] The date of the indictment is excluded from the Speedy Trial clock.  <u>See</u>
<u>United States v. Álvarez-Pérez</u>, 692 F.3d 1053, 1057 n.1 (9th Cir. 2010) (noting
that the "date indictment returned [is] automatically excluded") (citation and
quotation omitted).

| DATE | DAYS | REASON FOR DELAY |
|---|---|---|
| August 4, 2012 through August 14, 2012 | 10 | No Exclusion Applicable |
| August 15, 2012 through October 12, 2012 | 0 | The Court ordered Bauzó and the United States to file pretrial motions no later than October 12, 2012. (Crim. Docket No. 13 at p. 4.) "The interest of the defendant in adequately researching, drafting and filing of pretrial motions outweigh[ed] his interest and that of the society in a speedy trial." Id.; see 18 U.S.C. § 3161(h)(7). |
| October 12, 2012 through December 28, 2012 | 0 | Bauzó moved for an extension of time to file pretrial motions. (Crim. Docket No. 17.) The Court granted his request, ordering that pretrial motions be filed no later than October 12, 2012. (Crim. Docket No. 18.) On November 12, 2012, Bauzó requested a second extension of time. (Crim. Docket No. 19.) The Court again extended the pretrial motion deadline. (Crim. Docket No. 23.) Bauzó filed a timely motion to suppress on December 28, 2012. Crim. Docket No. 27; see 18 U.S.C. § 3161(h)(7).[16] |
| December 28, 2012 through January 16, 2014 | 0 | Disposition of Bauzó's motion to suppress. Crim. Docket Nos. 27 and 81; see 18 U.S.C. § 3161(h)(1)(D).[17] |

---

[16] See United States v. Apicelli, 839 F.3d 75, 84—85 (1st Cir. 2016) (finding "no abuse of discretion in [the district court's] issuance of an ends-of-justice continuance" to "give counsel time to prepare" and "to review the new evidence and potentially prepare new exhibits").

[17] Motions to suppress toll the Speedy Trial clock "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion." 18 U.S.C. § 3161(h)(1)(D); see United States v. Cobb, 697 F.2d 38, 42 (2d Cir. 1982) ("Is a motion to suppress a 'pretrial motion' within the meaning of [the STA]?  The answer is 'yes.'"); United States v. Staula, 80 F.3d 596, 601 (1st Cir. 1996) ("For motions that require a hearing, [the STA] excludes the time between the filing of the motion and the hearing on the motion, even if the delay is overlong, inexplicable, or unreasonable.").

| DATE | DAYS | REASON FOR DELAY |
|------|------|------------------|
| January 16, 2014 through February 4, 2014 | 0 | The Court granted the parties "a final term until February 4, 2014 to conclude plea negotiations." (Crim. Docket No. 81 at p. 6.) If plea negotiations proved unsuccessful, the Court set trial for March 21, 2014. <u>Id.</u>; <u>see</u> 18 U.S.C. § 3161(h)(7).[18] |
| February 5, 2014 through March 13, 2014 | 37 | No Exclusion Applicable |
| March 14, 2014 through March 18, 2014 | 0 | The United States filed an *ex parte* motion on March 14, 2014. (Crim. Docket No. 85.) The Court granted its motion on March 18, 2014. Crim. Docket No. 85; <u>see</u> 18 U.S.C. § 3161(h)(1)(D). |
| March 19, 2014 through September 30, 2014 | 0 | The United States filed a motion *in limine* on March 19, 2014. (Crim. Docket No. 88.) The Court granted the motion *in limine* on September 30, 2014. Crim. Docket No. 134; <u>see</u> 18 U.S.C. § 3161(h)(1)(D). |
| October 1, 2014 through October 2, 2014 | 0 | On September 29, 2014, Bauzó moved to strike surplusage from the indictment. (Crim. Docket No. 124.) The Court denied this motion on October 2, 2014. Crim. Docket No. 143; <u>see</u> 18 U.S.C. § 3161(h)(1)(D). |

---

[18] <u>See</u> <u>United States v. Gottesfeld</u>, 319 F. Supp. 3d 548, 560 (D. Mass. 2018) ("The plea negotiations here served to justify the interest of justice exclusions of time inured to the defendant's potential benefit."); <u>United States v. Fields</u>, 39 F.3d 439, 446 (3d Cir. 1994) (holding that there is "no reason why an 'ends of justice' continuance may not be granted in appropriate circumstances to permit plea negotiations to continue").

| DATE | DAYS | REASON FOR DELAY |
|------|------|------------------|
| October 3, 2014 through October 14, 2014 | 0 | Bauzó moved to continue trial on October 3, 2014. (Crim. Docket No. 155.) The Court granted Bauzó's motion to continue. (Crim. Docket No. 158.) Trial commenced on October 14, 2014. Crim. Docket No. 197; see 18 U.S.C. § 3161(h)(7). |

**Speedy Trial Clock Total**:

47 Days of Unexcused Delay

755 Days of Excused Delay

Trial commenced within the mandatory 70-day timeframe. A motion to dismiss the indictment pursuant to the Speedy Trial Act would have been denied. Vázquez, Trebilcock and Maldonado reasonably refrained from asserting a Speedy Trial Act challenge, declining to pursue a futile defense. See, e.g., Belton v. United States, Case No. 09-345, 2010 U.S. Dist. LEXIS 84443 *32 (D.N.H. July 15, 2010) ("Therefore, Belton's rights under the Speedy Trial Act were not violated and there was no basis for [defense counsel] to object or otherwise preserve this issue. Belton cannot meet his burden with regard to the Strickland performance prong."). Accordingly, an unfounded Speedy Trial Act argument cannot sustain Bauzó's section 2255 motion.

**2.    The Sixth Amendment**

To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, courts consider the following four factors:  (1) the length of the delay; (2) the reasons for delay; (3) the defendant's assertion of his or her speedy trial right; and (4) prejudice to the defendant caused by the delay.  See Barker v. Wingo, 407 U.S. 514, 530 (1972); United States v. Rivera-Fuentes, 979 F. Supp. 2d 233, 238 (D.P.R. 2014) (Besosa, J.).[19]  These factors "must be considered together with such other circumstances as may be relevant."  Id. at 533.

The length of delay is calculated from the arrest or indictment, whichever occurs first.  See United States v. Muñoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999).  Any delay over one year is considered presumptively prejudicial and triggers further inquiry.  See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).  The reason for delay is the "focal inquiry" in the Barker analysis.  United States v. Santiago-Becerril, 130 F.3d 11, 22 (1st Cir. 1997) (citations omitted).  A defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether [he or she] is being deprived of the right."

---

[19] When considering prejudice, courts focus on three speedy trial interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.  Barker, 407 U.S. at 532.  Among the three, the most serious consideration is protection against impairment of the defense.  Id.  Proof of particularized prejudice, however, is not essential to every speedy trial claim. See Doggett, 505 U.S. at 655.

Barker, 407 U.S. at 531-32.   A defendant should give some indication, prior to the assertion of a speedy trial violation, that he or she wishes to proceed to trial.   Muñoz-Amado, 182 F.3d at 62.

Bauzó stood trial two years after his arrest. (Crim. Docket Nos. 2, 4 and 197.)   The predominant reason for this delay is due to motions filed by Bauzó himself.   See Supra pp.6-7; United States v. Gates, 650 F. Supp. 2d 81, 86 (D. Me. 2009) (noting that where "reasons for delay are wholly attributable to the defendant, courts generally have unhesitantingly rejected Sixth Amendment speedy trial claims.")   The record is devoid of any indication that Bauzó asserted his Sixth Amendment right to a speedy trial.   On the contrary, Bauzó requested six continuances. (Crim. Docket Nos. 19, 37, 40, 73, 111 and 155.)   He avers that "delay caused [him] to send [the] prejudicial letter (Doc. #94) to [the] judge and cause[d] movant's witnesses to be lost, and witnesses [to lose] memory of facts."   (Civil Docket No. 12, Ex. 1 at p. 8.)   Bauzó mailed the letter on his own volition, not because "delay" compelled him to do so.   The section 2255 motion does not identify which witnesses were "lost," or how the two-year delay impaired Bauzó's defense.   Like the Speedy Trial Act, the Sixth Amendment is an insufficient basis for Bauzó's section 2255 motion.

### D.   The Cross-Examination of Officer Santos

Bauzó contends that Maldonado failed to cross-examine Officer Santos effectively. (Civil Docket No. 12 at p. 4.) He argues that Maldonado should have questioned Officer Santos "regarding his knowledge of [Police Officer González]'s prior misconduct against criminal defendants" and "whether he alerted his fellow officers and other assisting agents about the danger of armed confrontation with [Bauzó]." Id.

Bauzó fails to demonstrate how Maldonado's cross-examination of Officer Santos constituted a deficient performance or resulted in prejudice. During the cross-examination of PRPD sergeant José Rivera-Cardona ("Rivera-Cardona"), Maldonado attempted to introduce evidence that Officer González "violated four dispositions of the police regulations and that he was suspended for 120 days." (Crim. Docket No. 220 at p. 45.) The Court precluded Maldonado from introducing this evidence, holding that "[if] Agent González can testify, you can cross on him." Id. at p. 46. Federal Rule of Evidence 608(b) provides that:

> extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the **witness** or **another witness**.

Fed. R. Evid. 608(b) (emphasis added). Because Officer González did not testify at trial, extrinsic evidence concerning his

character for truthfulness was inadmissible.  An attempt to elicit extrinsic evidence concerning Officer González during the cross-examination of Officer Santos would have been denied as well.  The Court presumes that Maldonado's strategic decision to omit questions suggested by Bauzó was reasonable.  Phoenix v. Matesanz, 233 F.3d 277, 83 (1st Cir. 2000) (holding that "choices in emphasis during cross-examination are prototypical examples of unchallengeable strategy") (citation omitted); Tice v. Johnson, 647 F.3d 87, 102 (8th Cir. 2011) ("A criminal defense attorney routinely faces thorny tactical decisions that may heavily bear on the defendant's life or liberty.").  Consequently, Maldonado's cross-examination of Officer Santos survives Bauzó's ineffective assistance of counsel claim.

### E.   The Constitutional Right to Testify

Bauzó "has a fundamental constitutional right to testify in his own defense."  United States v. Merlino, 592 F.3d 22 (1st Cir. 2010) (citation and quotation omitted).[20]  The discretion to exercise this right rests with the defendant.  Id.; Rosenthal v. O'Brien, 713 F.3d 676, 687 (1st Cir. 2013) ("Counsel, acting alone, cannot waive [the right to testify] on behalf of the defendant . . . there must be something in the record suggesting

---

[20] The Supreme Court has held that the right to testify "has sources in several provisions of the Constitution," including the Fifth and Sixth Amendments.  Rock v. Arkansas, 483 U.S. 44, 51-52 (1987).

a knowing waiver.") (citation and quotation omitted).  According

to Bauzó, defense counsel failed to "consult with [him] pretrial

about his right to testify."  (Civil Docket No. 12, Ex. 1 at

pp. 8-9.)  He requests that the Court hold an evidentiary hearing.

        The First Circuit Court of Appeals' decision in Owens v,

United States is illustrative.  483 F.3d 48 (2007).  The defendant

in Owens filed a section 2255 motion, requesting an evidentiary

hearing and alleging that "his attorneys never informed him of his

right to testify or consulted with him about whether he would like

to do so."  Id. at 55.  Defense counsel submitted affidavits

stating that they did "not remember ever discussing [with the

defendant] that he had a right to testify."  Id.  The Owens court

emphasized that "failure to inform a defendant of his right to

testify" is objectively unreasonable and "could be prejudicial."

Id. at 58-59.  The district court abused its discretion by denying

the defendant's request for an evidentiary hearing because a "final

determination . . . would be best served by greater development of

the facts, many of which the United States disputes."  Id. at 61.

        In contrast to Owens, the facts before this Court are

not disputed.  The Court held an ex parte hearing on the third day

of trial.  (Crim. Docket No. 222.)  Maldonado and Bauzó addressed

the Court regarding Bauzó's decision to testify or remain silent.

Id.  Maldonado stated that:

Mr. Bauzó has consistently expressed his desire to testify . . . And he has informed me that, although he would like to testify, he has understood my explanations [for not testifying] and that he will follow my advice. I want the Court to examine Mr. Bauzó on the matter of this decision so that we can be clear on the record to protect Mr. Bauzó's rights.

Id. at pp. 95-96. The Court conducted the following inquiry:

**Court**: Mr. Bauzó, do you understand what your attorney just stated for the Court?

**Bauzó**: Yes.

**Court**: She has indicated that you have decided to exercise your Constitutional right not to testify, even though you may testify if you want to. Do you understand that?

**Bauzó**: Yes.

Id. at pp. 96—97. Moreover, months before trial Vázquez and Trebilcock met with Bauzó to "prepare him to testify were he to choose to do so." (Crim. Docket No. 90 at p. 1.) The record establishes unequivocally that counsel informed Bauzó of his right to testify.[21] Defense counsel and Bauzó had a discussion that "at bare minimum – [enabled him] to make an informed decision about whether to take the stand." Casiano-Jiménez v. United States, 817

---

[21] See Silicano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987) ("The affidavit, when read in the context of the trial record, suggests that appellant knew that, legally speaking, he could testify if he chose; but he chose not to testify as a matter of trial strategy, perhaps at the strong urging of counsel. As so read, the affidavit does not demonstrate that his constitutional right to testify was violated.") (citation omitted); Rosenthal, 713 F.3d 687-88 ("[Defense counsel's] ability to persuade [the defendant] not to testify was not a violation of [the defendant's] rights; counsel was instead fulfilling his obligation to pursue what he considered the best trial strategy.").

F.3d 816, 821 (1st Cir. 2016). Bauzó cannot now feign ignorance

of the right to testify in support of his *habeas* motion. An

evidentiary hearing is unwarranted because the facts are developed

and unambiguous. See Casiano-Jiménez v. United States, No. 11-

2049 (1st Cir. Nov. 30, 2012) (unpublished order) (noting that "a

blanket requirement of greater specificity at the evidentiary

hearing phase may not be reasonable depending on the facts and

circumstances presented by the case") (citation omitted).[22]

### F.  Dismissal of the Indictment at Sentencing

Bauzó asserts that he "has suffered a grave injustice

due to the prejudice caused by counsel's failure to investigate

and present a fabrication defense, or in the alternative, move for

dismissal of the indictment . . . at the sentencing hearing."

(Civil Docket No. 12, Ex. 1 at p. 7.) Bauzó presents a distorted

rendition of the record. The Court granted Maldonado's motion to

retain a private investigator to interview "several witnesses to

the events of the night when the defendant was arrested." (Crim.

Docket No. 120.) "This case was [also] investigated by the Federal

Public Defender's team of investigators." Id. Consequently,

---

[22] See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) ("[When], as in this case, a petition for federal *habeas* relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing.") (citation omitted).

Bauzó's claim that defense counsel failed to investigate the police

fabrication defense is meritless.

        Bauzó's argument that counsel failed to request

dismissal of the indictment at sentencing is precluded by Federal

Rule of Criminal Procedure 12 ("Rule 12").  Fed. R. Crim. P. 12.

Motions that pertain to "a defect in instituting the prosecution"

must be made before trial.  Fed. R. Crim. P. 12(b)(3).  Rule 12

provides that:

> The Court may, at the arraignment or as soon afterward
> as is practicable, set a deadline for the parties to
> make pretrial motions and may also schedule a motion
> hearing.  If the court does not set one, the deadline is
> the start of trial.

Fed. R. Crim. P. 12(c).  Motions to dismiss the indictment after

trial are not timely.  See United States v. Lyons, 703 F.2d 815,

821 (5th Cir. 1983) (holding that a post-trial motion to dismiss

allegedly duplicitous counts in an indictment was untimely);

United States v. Figueroa-Ocampo, 138 Fed. Appx. 988 *989 (9th

Cir. Apr. 4, 2005) (holding that the district court properly denied

"[the defendant's] motion to dismiss the indictment as untimely.

Federal Rule of Criminal Procedure 12(b)(3)(B) requires a motion

to dismiss the indictment before trial, and [the defendant] waited

until six months after trial to file his motion").  In sum, Bauzó

assigns error to defense counsel for failing to do what Rule 12

prohibits.  Accordingly, failure to move for dismissal of the

indictment at sentencing cannot satisfy the performance or prejudice prongs of the Strickland analysis.

### G.    The Armed Career Criminal Act

Bauzó seeks to vacate his sentence because the Court purportedly miscalculated his "numerous convictions" pursuant to the Armed Career Criminal Act. (Civil Docket No. 12, Ex. 1 at pp. 12-13.)   The First Circuit Court of Appeals held, however, that "it was not a clear or obvious error for the sentencing court to count three of Bauzó's prior convictions as career-offender qualifiers." Bauzó-Santiago, 867 F.3d at 27.   A section 2255 motion is not a substitute for a direct appeal. Foster v. Chatman, 136 S. Ct. 1737, 1758 (2016).   "[As] a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." Id. (citations omitted).[23]   Consequently, the Court need not address Bauzó's ACCA argument.

### H.    Alleged Omissions by Appellate Counsel

---

[23] See Conley v. United States, 323 F.3d 7, 22 (1st Cir. 2003) ("Claims that previously have been addressed on direct review, however, may not be readjudicated collaterally under § 2255 absent equitable considerations, such as actual innocence or cause and prejudice."); Alicea-Torres v. United States, 455 F. Supp. 2d 32, 54 (D.P.R. 2006) ("It is well settled in this Circuit that a prisoner may not use a Section 2255 Petition to relitigate questions that were raised and considered on direct appeal.") (Domínguez, J.) (citation omitted).

Bauzó maintains that his appellate attorney, Jorge Rivera-Ortiz, failed to challenge the denial of his motion to suppress and to address his police corruption argument. (Civil Docket No. 12, Ex. 1 at p. 14.) This claim fails to satisfy the performance prong of the Strickland analysis. "[Courts] have regularly said that appellate counsel is often well advised to choose the most promising arguments and is not obliged to crowd a brief with less promising ones which may distract." Cofske v. United States, 290 F.3d 437, 444 (1st Cir. 2002) (citation and quotation omitted); see Yarborough v. Gentry, 540 U.S. 1, 7 (2003) ("Even if some of the [omitted] arguments would unquestionably have supported the defense, it does not follow that counsel was incompetent for failing to include them. Focusing on a small number of key points may be more persuasive than a shotgun approach.").[24] Accordingly, Bauzó's section 2255 motion is **denied**.

## IV. Conclusion

For the reasons set forth above, Bauzó's motion to vacate, set aside, or correct his sentence in Criminal Case No. 12-602 (FAB) pursuant to section 2255 (Docket No. 12) is **DENIED**. This

---

[24] Pledger v. United States, Case No. 97-1725, 1998 U.S. App. LEXIS 1615 *15 (1st Cir. Feb. 15, 1998) ("[The] determination of which issues have the best chance of succeeding on appeal obviously entails the exercise of professional judgment.").

case is **DISMISSED, with prejudice**.   Judgment shall be entered

accordingly.

If petitioner files a notice of appeal, no certificate of

appealability shall issue because petitioner has not made a

substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 27, 2020.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE